IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 14-cv-01062-BNB

TYRONE WALKER,

Plaintiff,

v.

JOHN W. HICKENLOOPER, in his Individual Capacity,
BILL RITTER JR., in his Individual Capacity,
TOM CLEMENTS, in his Individual and Official Capacities,
ARISTEDES W. ZAVARAS, in his Individual and Official Capacities,
RICK RAEMISCH, in his Individual and Official Capacities,
KEVIN MILYARD, in his Individual and Official Capacities,
JAMES FALK, in his Individual and Official Capacities,
JOHN CHAPDELAINE #10277, in his Individual and Official Capacities,
JAMIE SOUCIE #12620, in her Individual and Official Capacities,
MARSHAL GRIFFITH #14298, in his Individual and Official Capacities,
JULIE FULLER #10068, in her Individual and Official Capacities,
ASTRIA LOMBARD #14539, in her Individual and Official Capacities, and
JANE DOE, in her Individual and Official Capacities,

Defendants.

_____

**ORDER**

_____

This matter arises on the following motions:

(1) **Defendants Hickenlooper and Ritter's Motion to Dismiss** [Doc. #29, filed

08/05/2014] ("Hickenlooper's Motion"); and

(2)   **CDOC Defendants' Motion to Dismiss Amended Complaint** filed by defendants Zavaras, Raemisch, Milyard, Falk, Chapdelaine, Soucie, Griffith, Fuller and Lombard (the "DOC defendants")[1] [Doc. #37, filed 08/26/2014] (the "DOC Defendants' Motion")

The motions are GRANTED.

## I.   STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss, the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff.  City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976).  The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief.  Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

---

[1]Defendant Tony Carochi was dismissed on September 4, 2014 [Doc. #43].  On June 6, 2014, the Office of Legal Services for the Colorado Department of Corrections filed a Waiver of Service of Summons [Doc. #10].  Service of process was not waived for defendant Clements because Clements "is deceased and no longer a current DOC employee."

## II.   BACKGROUND

The plaintiff is currently incarcerated by the Colorado Department of Corrections ("DOC") at the Sterling Correctional Facility ("SCF").  He filed his Amended Prisoner Complaint on May 7, 2014 [Doc. #6] (the "Complaint").  The Complaint contains the following allegations:

1.   On February 21, 2008, the City of Sterling's Public Water System sent to its customers a notice that the drinking water contained uranium and other "cancer causing" contaminants.  *Complaint*, p. 7, ¶¶ 1, 3, 4.[2]  The notice advised customers not to consume the tap water and recommended drinking water from alternative sources like bottled water.  Id. at ¶ 3.

2.   The notice "was prompted by" the Colorado Department of Public Health and Environment (the "CDPHE") who, through its Water Quality Control Division, alerted the Sterling Public Water System.  The CDPHE reports directly to the Governor of Colorado.  The Water Quality Control Commission is statutorily selected and supported by the Governor and his office.  Id. at ¶ 2.

3.   At the time the notice was issued, Bill Ritter was the Governor of Colorado and Aristedes Zavaras was the Executive Director of the DOC.  Id. at ¶ 1.

4.   The notice was intentionally kept from the SCF prison population.  Id. at ¶ 4.  The prison population became aware of the contamination through an article in the local newspaper.  Id. at pp. 7-8, ¶ 5.

---

[2]The Complaint is not consecutively paginated.  Therefore, I cite to the page numbers of the Complaint as they are assigned by the court's docketing system.

5.   After the prisoners became aware of the contamination, defendant Chapdelaine issued a number of statements to the prison population.  Id. at p. 8, ¶ 6.  The first statement acknowledged that the city's water was contaminated with hazardous waste and stated that a new state-of-the-art water treatment facility was being built to address the problem.  Id. at ¶ 7.  The second statement stated that SCF's water came from a totally different and uncontaminated source than the water supplied to the city.  Id. at ¶ 8.  The third statement stated that SCF's water was safe to consume; SCF's water came from an uncontaminated source; the new water treatment facility was up and running; and the water in the city of Sterling was now free of contaminants.  Id. at ¶ 9.

6.   The plaintiff believed the statements issued by Chapdelaine and continued to consume the SCF tap water.  Id. at ¶ 10.

7.   On September 2, 2008, Governor Ritter issued an "Enforcement Order" that declared the Sterling city drinking water to be unsafe for human consumption.  Id. at ¶ 11.  On September 23, 2008, Governor Ritter issued an order "correcting" the Enforcement Order.  Id. at ¶ 12.  On July 25, 2013, Governor Hickenlooper issued an amendment to the Enforcement Order.  Id. at ¶ 13.

8.   On August 22, 2013, DOC Executive Director Raemisch issued a memorandum (the "Raemisch Memorandum") to the prison population which represented that it came from the Governor's office and had been approved by Governor Hickenlooper.  The Raemisch Memorandum stated that the DOC "had just discovered, for the first time, via notice from the CDPHE issued February 4, 2013, that the 'SCF tap water' was contaminated."  Id. at pp. 8-9, ¶ 14.  The memorandum explained that "people who drink water containing uranium in excess of

drinking water standards over many years may have an increased risk of getting cancer and kidney toxicity."  The memorandum also stated that some prisoners "may be at increased risk of getting cancer or kidney toxicity and should seek advise from the facility medical staff."  Id. at ¶ 15.

9.  The plaintiff submitted an Informal Resolution Form on August 28, 2013.  He referred to the water report issued on February 2008 and to the statements issued by Chapdelaine.  Id. at ¶ 16.  He accused SCF officials of lying about the safety of SCF water, the source of the water, and the new state-of-the-art water treatment facility.  Id. at ¶ 17.  He demanded that SCF officials and medical personnel tell him exactly what was wrong with the water, the ailments caused by consumption of the water, and the appropriate medical care needed for his prolonged exposure to the water.  Id. at ¶ 18.

10.  On August 28, 2013, Warden Falk issued a memorandum (the "Falk Memorandum") to the SCF prison population which provided much of the same information as the Raemisch Memorandum.  Id. at pp. 9-10, ¶¶ 19-20.  The Falk Memorandum represented that it came from Governor Hickenlooper's office and had been approved by Hickenlooper and Raemisch.  Id. at p. 10, ¶ 21.

11.  On September 5, 2013, a "general grievance response" was issued to the plaintiff's Informal Resolution.  The response was simply a copy of the Falk Memorandum.  Id. at ¶ 22.

12.  On September 6, 2013, the plaintiff filed a step one grievance which was a reiteration of his Informal Resolution.  Id. at ¶ 23.  The grievance was denied by defendant Fuller on September 27, 2013.  Fuller attached to the response a form titled "Frequently Asked

Questions About Uranium in Drinking Water."  The form provided some information regarding possible health risks caused from exposure to the contaminated water.  Id. at ¶ 24.

13.   On October 9, 2013, the plaintiff filed a step two grievance.  Id. at ¶ 25.  On November 5, 2013, defendant Soucie responded to the grievance by telling the plaintiff to submit a kite to the medical department concerning the issues raised in his grievance.  Id. at pp. 10-11, ¶ 26.  The plaintiff submitted a kite to the medical department which stated that he was experiencing nausea, swelling of the gums, and extreme dehydration despite consuming plenty of water.  Id. at ¶ 27.

14.   On November 14, 2013, the plaintiff submitted a step three grievance, which was denied by defendant Griffith on January 8, 2014.  Id. at ¶¶ 28, 37.

15.   SCF officials allege that the alternative drinking water was brought in from a correctional facility in Canon City, Colorado.  On November 19, 2013, the plaintiff filed an Informal Resolution Form concerning the alternative drinking water.  Id. at ¶ 29.  The plaintiff explained that the alternative drinking water was causing the same side effects as the contaminated SCF tap water; stated that the alternative drinking water was just as contaminated as the tap water, or was actually tap water; and demanded to know what was in the alternative drinking water.  Id. at ¶ 30.

16.   On November 30, 2013, the plaintiff was called to the medical department regarding his symptoms.  He explained to medical personnel that his gums were swelling, he was nauseous, and he was dehydrated for no apparent reason.  Id. at pp. 11-12, ¶ 31.  A nurse drew a blood sample, ordered further tests, took his blood pressure, temperature, and heart rate, and told him there was nothing wrong with him.  Id. at p. 12, ¶ 32.

17.   On December 4, 2013, the plaintiff filed a step one grievance about the alternative drinking water.  It was denied on December 9, 2013.  Id. at ¶ 33.  He filed a step two grievance on December 13. 2013 which was denied by defendant Soucie.  Soucie again recommended that the plaintiff submit a kite to the medical department regarding the issues raised in his grievance. Id. at ¶¶ 34-35.  The plaintiff filed a step three grievance on January 3, 2014, which was denied by defendant Lombard on January 29, 2014.  Id. at ¶¶ 36, 38.

18.   The plaintiff was seen by the medical department on February 7, 2014, for his reactions to the contaminated water.  He was seen by a nurse, defendant Jane Doe.  His blood pressure, heart rate, and temperature were taken.  The nurse was "outrageously confrontational and verbally abusive."  She told the plaintiff that his reported symptoms of swollen gums, extreme dehydration, and nausea were normal and that "she saw nothing that would cause her any concern."  Id. at ¶ 40.  The nurse refused "to give any sort of diagnosis or run any sort of test concerning plaintiff's symptoms and concerns about his exposure to the contaminated water which had been declared by two governors," and she told him that the tap water was safe to consume.  Id. at ¶¶ 41-42.

19.   The plaintiff has been afraid to return to the medical department "for fear of what medical and SCF personnel may do to him if he remains persistent in seeking medical treatment for his symptoms and keeps complaining about the water.  The SCF medical facility, through nurse Jane Doe, has made it absolutely clear that they will not tolerate prisoners complaining of the water, nor will they provide medical care for anyone who appears to be suffering as a result of their consumption of the contaminated water."  Id. at pp. 13-14, ¶ 43.

7

20.   On March 6, 2014, a memorandum was posted at SCF stating that the new state-of-the-art water treatment facility was opened and the problem with the water had been fixed.  Id. at p. 14, ¶ 45.  On March 10, 2014, the alternative drinking water was removed.  Id. at ¶ 46.

21.   Another inmate told the plaintiff that the alternative drinking water was also polluted with uranium and other toxic contaminants, had been polluted for years, and defendants Hickenlooper, Milyard, Falk, Clements, Zavaras, and Raemisch were aware that the water was toxic before shipping it to SCF.  Id. at ¶¶ 47-48.

22.   Defendant Milyard was the acting warden of SCF when the 2008 report was issued and when Governor Ritter submitted the Enforcement Order and the correction to the Enforcement Order.  Id. at pp. 14-15, ¶ 50.  The report and the Enforcement Order were provided to Milyard.  Id. at p. 15, ¶ 51.  Milyard was "fully aware of the facts mention[ed] in this claim " and "did nothing to alleviate the problem."  Id. at ¶ 53.

23.   Defendants Ritter and Hickenlooper were well-informed of the hazardous condition, the risk it posed to the plaintiff's health, and the CDPHE's recommendation to provide prisoners water from an alternate source.  Id. at ¶ 54.  They failed to provide for the plaintiff's safe-keeping despite their knowledge.  Id. at p. 16, ¶ 55.

24.   Defendant Chapdelaine was well-informed of the hazardous condition, the risk it posed to the plaintiff's health, and the CDPHE's recommendation to provide prisoners water from an alternate source.  Chapdelaine failed to take action and lied to the plaintiff by repeatedly telling him the water was safe to consume  Id. at ¶ 56.

25.   Defendant Falk was well-aware of the hazardous condition, the risk it posed to the plaintiff's health, and the CDPHE's recommendation to provide prisoners water from an

alternate source.  <u>Id.</u> at ¶ 57.  Falk knowingly provided prisoners with "toxic, life threatening water from Canon City" and told the prisoners that it was safe to consume.  <u>Id.</u> at p. 17, ¶ 58.

26.   Defendants Soucie, Fuller, Griffith, and Lombard were provided with same memorandums as the plaintiff.  Therefore, they were informed of the hazardous condition, the threat it posed to the plaintiff's well-being, and the CDPHE's recommendation to provide prisoners water from an alternate source.  <u>Id.</u> at ¶ 60.  These defendants denied the plaintiff's grievances at every level.  <u>Id.</u> at ¶ 62.

27.   Defendant Jane Doe had been provided with the memorandums and had personal knowledge of the contaminated water.  <u>Id.</u> at p. 18, ¶ 63.  She was also aware of the risk posed to the plaintiff and the CDPHE's recommendation to provide prisoners water from an alternate source.  <u>Id.</u> at ¶ 64.  She had the ability to provide the plaintiff with uncontaminated drinking water, but she did not.  <u>Id.</u> at ¶ 65.

The Complaint asserts three claims for relief.  Claim One alleges that all of the defendants violated the plaintiff's Eighth Amendment rights by exposing him to a hazardous condition of confinement.  Claim Two alleges that all of the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.  Claim Three alleges that defendant Chapdelaine's lies prevented the plaintiff from accessing the courts for six years in violation of the plaintiff's First, Fifth, and Fourteenth Amendment rights.  The plaintiff is suing defendants Hickenlooper and Ritter in their individual capacities and the remainder of the defendants in both their individual and official capacities.  <u>Id.</u> at p. 1; *Response to*

*Defendants' Motion to Dismiss* [Doc. #46], pp. 4, 5, and 6.  The plaintiff seeks declaratory and injunctive relief.  He also seeks compensatory and punitive damages.[3]

## III.   ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

## A.   Official Capacity Claims

The defendants assert that, insofar as they are sued in their official capacities, the claims against them for compensatory damages are barred by Eleventh Amendment immunity.  The plaintiff is not suing defendants Hickenlooper and Ritter in their official capacities.  Therefore, my analysis applies only to the DOC defendants.

The Eleventh Amendment bars suits in federal courts against unconsenting states by the state's own citizens and by citizens of another state.  Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990).  Eleventh Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction." Fent v. Okla. Water Res. Bd., 235 F.3d 553, 559 (10th Cir. 2000) (emphasis omitted).  Eleventh Amendment immunity applies to suits arising under 42 U.S.C. § 1983.  Quern v. Jordan, 440 U.S. 332, 345 (1979).

---

[3]Any other claims the plaintiff may be attempting to assert are unintelligible and will not be recognized.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

The Eleventh Amendment precludes federal jurisdiction over state officials acting in their official capacities for retroactive monetary relief, but not for prospective injunctive relief. Pennhurst, 465 U.S. at 102-03,105-06.  The DOC defendants are employed by the Colorado Department of Corrections.  *Complaint*, second consecutive page.  The DOC is an agency or subdivision of the State of Colorado.  Consequently, the Eleventh Amendment bars suit against the defendants in their official capacities for retroactive monetary relief.  The claims against defendants Clements, Zavaras, Raemisch, Milyard, Falk, Chapdelaine, Soucie, Griffith, Fuller, Lombard, and Jane Doe[4] in their official capacities for monetary relief are DISMISSED based on Eleventh Amendment immunity.

## B.  Individual Capacity Claims

Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).

When analyzing the issue of qualified immunity, I  consider two factors.  I must determine whether the plaintiff has sufficiently alleged a violation of a statutory or constitutional right.  In addition, I must inquire whether the right was clearly established at the time of the

---

[4]Although defendant Clements has not been served with process and defendant Doe has not been identified, I address the claims against them in the interest of judicial economy.

violation.  Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 745 (10th Cir. 1999).[5]

### 1.  Claim One

In Claim One, the plaintiff alleges that all of the defendants violated his Eighth Amendment rights by exposing him to the contaminated water.  The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter, and medical care and take "reasonable measures to guarantee the safety of the inmates."  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quotations and citations omitted).

A prisoner claiming an Eighth Amendment violation must establish both objectively and subjectively that particular conditions of confinement constitute cruel and unusual punishment.  Wilson v. Seiter, 501 U.S. 294, 297-298 (1991).  To satisfy the objective component, a plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm."  Farmer, 511 U.S. at 834.  To satisfy the subjective component, a plaintiff must demonstrate that the prison official was "deliberately indifferent" to a substantial risk of serious harm.  Farmer, 511 U.S. at 834.  The subjective component of a deliberate indifference claim is met if a prison official "knows of and disregards an excessive risk to inmate health or safety."  Farmer, 511 U.S.

---

[5]The order in which I may consider these factors is discretionary.  Pearson v. Callahan, 555 U.S. 223, 236 (2009).  However, both prongs must be satisfied.  Herrera v. City of Albuquerque, 589 F.3d 1064, 1070 (10th Cir. 2009).

at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.

The defendants argue that the plaintiff has failed to allege that they personally participated in the alleged violation of his Eighth Amendment rights.  An individual cannot be held liable under section 1983 unless he caused or participated in an alleged constitutional violation.  McKee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983).  Respondeat superior is not within the purview of section 1983 liability.  Id.  In order to hold a supervisor liable under section 1983, a plaintiff must show that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."  Brown v. Montoya, 662 F.3d 1152, 1164 (10th Cir. 2011) (internal quotations and citation omitted).  Without a showing of personal involvement in the alleged constitutional violation, liability will not be imposed on a supervisory official.  Id. at 1163.

The defendants attach to their motions copies of memoranda which they state are the Raemisch Memorandum and the Falk Memorandum.  *Hickenlooper's Motion,* Exs. A and B; *DOC Defendants' Motion*, Exs. A and B.  When, as here, a plaintiff refers to a document in the complaint that is central to his claim but does not attach it to the complaint, a defendant may submit an indisputably authentic copy to be considered on a motion to dismiss.  GFF Corp. v. Associated Wholesale Grocers, 130 F.3d 1381, 1384-1385 (10th Cir. 1997).  The memoranda are central to the plaintiff's claims, and the plaintiff does not dispute their authenticity.

The plaintiff states that the Raemisch Memorandum "represents" that it came from the Governor's office; "represents" that it had been approved by Governor Hickenlooper; states that

the DOC had just discovered that the tap water at SCF was contaminated; states that "people who drink water containing uranium in excess of drinking water standards over many years may have an increased risk of getting cancer and kidney toxicity"; and states that some prisoners "may be at increased risk of getting cancer or kidney toxicity and should seek advise from the facility medical staff."

The Raemisch Memorandum does not represent that it came from the Governor's office, nor does it represent that it was approved by Governor Hickenlooper. *Hickenlooper's Motion,* Ex. A; *DOC Defendants' Motion*, Ex. A. The Raemisch Memorandum states that it was issued by the SCF Public Water System; SCF receives its drinking water from the city of Sterling; in February 2013, the city found that its water contained a uranium level of 0.031 mg/L; the drinking water standard for uranium is 0.030 mg/L; during the DOC's continued testing of its drinking water, a "small increase in the allowable amount of uranium was found" during the month of July; and the CDPHE "believes that uranium is not considered to be a contaminant associated with health effects from short-term exposure at the recently observed levels."

The plaintiff alleges that the Falk Memorandum also represents that it came from Governor Hickenlooper's office and was approved by Governor Hickenlooper. The Falk Memorandum does not represent that it came from the Governor's office, nor does it represent that it was approved by Governor Hickenlooper. *Hickenlooper's Motion,* Ex. B; *DOC Defendants' Motion*, Ex. B.

The plaintiff attempts to hold defendants Hickenlooper and Ritter liable for his exposure to contaminated water because they were "well-informed" of the situation and the risk it posed to the plaintiff's health. The allegations of their knowledge of the risk to the plaintiff's health are

vague and conclusory.  The plaintiff does not allege any specific facts to show that defendants

Hickenlooper and Ritter had any knowledge that the plaintiff's health was at risk from

contaminated water.  Nor does he allege any facts to show that either one of the defendants

created a policy that created contamination of the water.  Claim One is dismissed as to

defendants Hickenlooper and Ritter.

The plaintiff's only specific factual allegation against defendant Raemisch is that he

issued the August 22, 2013 memorandum.  Similarly, the plaintiff's only specific factual

allegation against Falk is that he issued the August 28, 2013, memorandum.  The Complaint does

not contain any specific factual allegations against defendants Clements, Milyard, and Zavaras.

The plaintiff provides only conclusory allegations that all of these defendants knew of the

hazardous condition and failed to address it.

A complaint must contain specific allegations sufficient to establish that it plausibly

supports a claim for relief.  Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir.

2007).  "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as

true) to suggest that he or she is entitled to relief."  Robbins v. Oklahoma, 519 F.3d 1242, 1247

(10th Cir. 2008) (internal quotations and citation omitted).  This is especially true in cases, like

this one, where the defense of qualified immunity has been asserted.  Id. at 1248-49.

The Tenth Circuit Court of Appeals has stated:

> [P]lausibility . . . refer[s] to the scope of the allegations in a
> complaint: if they are so general that they encompass a wide swath
> of conduct, much of it innocent, then the plaintiffs have not nudged
> their claims across the line from conceivable to plausible.  The
> allegations must be enough that, if assumed to be true, the plaintiff
> plausibly (not just speculatively) has a claim for relief.

Id. at 1247 (internal quotations and citations omitted except as noted).

To state a claim in federal court, a complaint must explain what each defendant did to the plaintiff; when the defendant did it; how the defendant's action harmed the plaintiff; and what specific legal right the plaintiff believes the defendant violated.   Nasious v. Two Unknown B.I.C.E. Agents, 492 F.3d 1158, 1163 (10th Cir. 2007).

Here, the plaintiff's conclusory allegations are insufficient to state a plausible claim that defendants Raemisch, Falk, Clements, Milyard, and Zavaras personally participated in the alleged constitutional violation.   In addition, to the extent the plaintiff is attempting to hold those defendants liable because of their supervisory positions, he has failed to allege any facts to show that they created a policy that caused the alleged violation.   Claim One is dismissed as to defendants Raemisch, Falk, Clements, Milyard, and Zavaras.

The plaintiff attempts to hold defendants Fuller, Soucie, Griffith, and Lombard liable because they responded to his grievances.   Denial of a grievance is insufficient to establish personal participation in an alleged constitutional violation.   Larson v. Meek, 240 Fed.Appx. 777, 780 (10th Cir. 2007).   Defendants Fuller, Soucie, Griffith, and Lombard cannot be held liable for an alleged constitutional violation for which they were not directly responsible.   The plaintiff does not allege any facts to show that those defendants personally participated in alleged exposure to contaminated water.   Accordingly, all of the claims defendants Fuller, Soucie, Griffith, and Lombard are dismissed.

The plaintiff summarily alleges that Jane Doe "had the ability to provide the plaintiff with, at the minimum, alternative, uncontaminated drinking water."  *Complaint*, p. 18,  ¶ 66. That conclusory allegation is insufficient to state a plausible claim for relief against Jane Doe for

exposing the plaintiff to contaminated drinking water.  Claim One is dismissed as against Jane Doe.

The plaintiff alleges that defendant Chapdelaine issued three statements: (1) a statement acknowledging that the city's water was contaminated with hazardous waste and a new state-of-the-art water treatment facility was being built to fix the problem; (2) a statement that SCF's water came from a different and uncontaminated source than the water supplied to the city of Sterling; and (3) a statement that nothing was wrong with SCF tap water, it was safe to consume, it came from an uncontaminated source, the new treatment facility was up and running, and the city's water was also now contaminant-free.  *Complaint*, p. 8, ¶¶ 6-9.  The plaintiff alleges that the statements were issued in approximately 2008.  Id. at p. 23, ¶ 86.  Because he believed that the statements were true, he continued to consume the SCF tap water.  Id. at p. 8, ¶ 10.

Based on the issuance of an Enforcement Order in September 2008 which declared that the water was unsafe for human consumption and the Raemisch Memorandum issued in 2013 which states that the tap water was contaminated in the month of July, the plaintiff draws the implausible conclusion that the water was contaminated from 2008 through 2013 and that Chapdelaine's statements were, therefore, false.  That conclusion is not supported by any factual allegations.  The plaintiff has failed to state a plausible claim against Chapdelaine, and Claim One is dismissed as against him.

### 2.  Claim Two

In Claim Two, the plaintiff alleges that all of the defendants were deliberately indifferent to his serious medical needs.  He alleges that he was seen in the medical department on November 30, 2012, by unnamed medical personnel and again on February 7, 2014, by Jane

Doe.  The Complaint does not contain any specific factual allegations to show that any of the other defendants were involved in his medical care or that they were otherwise deliberately indifferent to his medical needs.  Therefore, Claim Two is dismissed as to defendants Hickenlooper, Ritter, Clements, Zavaras, Raemisch, Milyard, Falk, Chapdelaine, Soucie, Griffith, Fuller, and Lombard.

The plaintiff alleges that he was seen on November 30, 2012, by unnamed medical personnel "concerning the symptoms he believed [were] being caused by both the contaminated 'SCF tap water' and the 'alterative drinking water.'"  He states that his "gums were swelling," he was "constantly dehydrated in spite of drinking plenty of water," and he was "nauseous for no apparent reason."  *Complaint*, p. 11, ¶ 31.  The nurse took his blood pressure, temperature, and heart rate and ordered that blood be drawn and further tests be conducted.

He alleges that he saw defendant Jane Doe on February 7, 2014, for his symptoms of swelling gums, extreme dehydration, and nausea.  Id. at p. 13, ¶ 40.  His blood pressure, temperature, and heart rate were taken.  He alleges that Jane Doe "did not perform any other sort of examination or test" and refused "to give any sort of diagnosis."  He further alleges that she "was outrageously confrontational and verbally abusive" and told the plaintiff that his symptoms were "perfectly normal" and that she "saw nothing that would cause her concern."

Rather than demonstrating deliberate indifference, the plaintiff's allegations demonstrate that he was seen by Jane Doe, his vital signs were taken, and she told him nothing was wrong with him.  To the extent the plaintiff believes Jane Doe should have done more or should have done something differently, "a prisoner who merely disagrees with a diagnosis or a prescribed

course of treatment does not state a constitutional violation." Perkins v. Kansas Dept. of

Corrections, 165 F.3d 803, 811 (10th Cir. 1999).  As the Court stated in Estelle v. Gamble:

> [A] complaint that a physician has been negligent in diagnosing or
> treating a medical condition does not state a valid claim of medical
> mistreatment under the Eighth Amendment. Medical malpractice
> does not become a constitutional violation merely because the
> victim is a prisoner. In order to state a cognizable claim, a prisoner
> must allege acts or omissions sufficiently harmful to evidence
> deliberate indifference to serious medical needs.

429 U.S. 97, 106 (1976).

In addition, verbal abuse, taunting, or harassment--even if extreme--is generally

insufficient to establish a constitutional violation.  McBride v. Deer, 240 F.3d 1287, 1291 n.3

(10th Cir. 2001) (stating that a prison official's threat to spray the plaintiff with mace does not

violate the Eighth Amendment); Abeyta v. Chama Valley Independent School District, 77 F.3d

1253 (10th Cir. 1996) (holding that a school teacher calling a twelve year old female student a

prostitute over a 1½  month period and permitting her classmates' resulting taunting for weeks

does not violate substantive due process); Escobar v. Parker, 982 F.2d 528, 1992 WL 372400

(10th Cir. 1992) (holding that, after an altercation, a guard telling a third inmate that the plaintiff

should have been stabbed and announcing that the plaintiff was dangerous and could not be

trusted did not violate the plaintiff's Eighth Amendment or the due process rights); Walker v.

Young, 958 F.2d 381, 1992 WL 49785 (10th Cir. 1992) (holding that a correctional officer's

threat to "get even" after the prisoner filed a grievance and labeling the prisoner a snitch did not

state a constitutional violation); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (holding

that a prisoner's claim that the sheriff laughed at him and threatened to hang him does not state a

constitutional deprivation under § 1983).

19

The plaintiff has failed to allege specific facts to show that defendant Jane Doe was deliberately indifferent to his serious medical needs.  Claim Two is dismissed as against Jane Doe.

### 3.  Claim Three

In Claim Three, the plaintiff alleges that the statements issued by defendant Chapdelaine caused the plaintiff to believe that the SCF drinking water was safe for six years.  As a result of Chapdelaine's fraudulent statements, the plaintiff was denied access to the courts for six years in violation of his First, Fifth, and Fourteenth Amendment rights.

The right of access to the courts is a fundamental constitutional right.  Bounds v. Smith, 430 U.S. 817, 828 (1977).  An inmate alleging denial of access to the courts must allege an actual injury.  Lewis v. Casey, 518 U.S. 343, 349 (1996).  To establish actual injury, however, "an inmate must allege and prove prejudice arising from the defendants' actions."  Peterson v. Shanks, 149 F.3d 1140, 1145 (10th Cir. 1998).

Here, the plaintiff has not alleged actual injury.  To the contrary, he was able to present his claims against Chapdelaine in this action.  Claim Three is dismissed.

### IV.  CONCLUSION

IT IS ORDERED:

(1)   Defendants Hickenlooper and Ritter's Motion to Dismiss [Doc. #29] is GRANTED;

(2)   CDOC Defendants' Motion to Dismiss Amended Complaint [Doc. #37] is GRANTED;

(3)   The Complaint is DISMISSED WITH PREJUDICE; and

(4)   Judgment shall enter in favor of the defendants on all claims.

Dated October 9, 2014.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge